J-A01007-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LAMAR DOUGLAS CLARK | : | |
| | : | |
| Appellant | : | No. 400 MDA 2020 |

Appeal from the PCRA Order Entered January 31, 2020
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s):  CP-36-CR-0005760-2014

BEFORE: LAZARUS, J., NICHOLS, J., and KING, J.

MEMORANDUM BY NICHOLS, J.:                              **FILED MARCH 21, 2022**

Appellant Lamar Douglas Clark appeals from the order denying his first

Post Conviction Relief Act[1] (PCRA) petition.  This case returns to us after our

Supreme Court granted prior PCRA counsel's motion to withdraw, reinstated

Appellant's PCRA appellate rights *nunc pro tunc*, and remanded this matter to

this Court.  Subsequently, we remanded this matter to the PCRA court for the

appointment of new counsel, and this case is now ripe for disposition.  On

appeal, Appellant raises claims alleging ineffective assistance of counsel.  After

review, we vacate and remand for further proceedings.

A prior panel of this Court summarized the relevant facts and procedural

history of this matter as follows:

_____

[1] 42 Pa.C.S. §§ 9541-9546.

Some time before 10:00 p.m. on November 7, 2014, Appellant entered Shenk's Cafe, a neighborhood tavern in Lancaster, Pennsylvania, with Daniel Ishman, known as "Zip." The bar area of Shenk's Cafe is a narrow space, approximately 14 feet wide. At the time Appellant entered, the crowd in the barroom was estimated at between 20 and 50 people.

Appellant and Ishman left the bar and returned approximately twenty minutes later with Joshwin Gonzalez, known as "J" or "Joey." At around 10:00 p.m., Appellant called Ishman over and said that "he felt like someone was after him." Then, as Gonzalez approached, Appellant told him to stop and asked why he was coming over. Gonzalez replied that he thought Appellant had called him. Appellant then pointed a [revolver] at him and fired five shots. Three people were struck by gunfire.

Joshwin Gonzalez suffered a gunshot wound to the left arm. Cynthia Boots, a customer who had been seated near the jukebox, suffered a wound to the left breast. Barry Diffenderfer, a customer also seated near the jukebox, suffered a fatal wound to the chest. He was found unresponsive on the floor by the first responding police officer.

Shortly after the shooting, police observed Appellant running naked on Chestnut Street, approximately two blocks from Shenk's Cafe. As Appellant was being detained, a juvenile called to police and gave a [revolver] to Lancaster City Detective Stanley Roache explaining that Appellant had given the weapon to him. That weapon, a five-shot revolver, contained five spent .38 caliber cartridges. Four .38 caliber bullets were recovered from Shenk's Cafe; one had DNA from Joshwin Gonzalez and a second had DNA from Cynthia Boots. A fifth bullet was recovered from the body of Barry Diffenderfer. The [revolver] that the juvenile gave to police was traced back to the late father of Appellant's current girlfriend at the address where Appellant lived with his girlfriend.

Police were able to identify and interview approximately twelve people who had been in Shenk's Cafe that night. One witness, Veldresha Lucas, Appellant's sister, testified to seeing the interaction between Appellant, Ishman and Gonzalez that preceded the shooting as well as the shooting itself. Others testified to hearing shots and hiding in fear.

- 2 -

> Appellant also presented evidence which was largely discredited by the jury. Martha Cuelo testified that she overheard Ishman saying that "they [*i.e.*, Ishman and Gonzalez,] had set up Appellant and he was going to never come out."
>
> On cross examination, Detective Roache testified that the juvenile who handed him the pistol told him that Appellant had said "they tried to kill me." Police Officer Ben Bradley, who was present when Appellant was detained and transported him to the police station, also testified on both direct and cross examination that Appellant had said "they tried to set me up in Shenk's."

***Commonwealth v. Clark***, 400 MDA 2020, 2021 WL 118887, *1 (Pa. Super. filed Jan. 13, 2021) (unpublished mem.) (citation omitted and formatting altered).

Appellant was charged with third-degree murder, firearms not to be carried without a license, aggravated assault, and multiple counts of recklessly endangering another person.[2] At trial, Appellant was represented by Randall Miller, Esq. (trial counsel). The Commonwealth presented testimony from Lucas and another eyewitness, Joshua Welsh, who stated that Appellant aimed his revolver at Gonzalez before firing. R.R. at 241a[3], 317a-18a.[4] Lucas explicitly testified that Appellant fired five rounds at Gonzalez. ***Id.*** at 241a.

At the conclusion of trial, the trial court instructed the jury on third-degree murder, self-defense, and voluntary manslaughter. R.R. at 374a-77a.

---

[2] 18 Pa.C.S. §§ 2502(c), 6106(a)(1), 2702(a)(1), and 2705, respectively.

[3] N.T. Trial vol. 3, 4/28/16, at 78.

[4] We may cite to the reproduced record for the parties' convenience.

Trial counsel did not request an involuntary-manslaughter instruction.[5]  Our

Supreme Court summarized the subsequent procedural history as follows:

> On May 3, 2016, a jury found [Appellant] guilty of one count of
> third-degree murder and related crimes . . . .  The trial court
> sentenced [Appellant] to an aggregate term of thirty-eight-and-
> one-half to eighty-one years' incarceration, and the Superior
> Court affirmed his judgment of sentence.  This Court denied his
> petition for allowance of appeal on January 3, 2018.  *See*
> *Commonwealth v. Clark*, 1289 MDA 2016, 2017 WL 1520732
> (Pa. Super. Apr. 25, 2017), *petition for allowance of appeal*
> *denied*, 644 Pa. 536, 177 A.3d 829 (2018) (*per curiam*).
>
> On November 26, 2018, [Appellant], acting *pro se*, timely filed a
> [PCRA petition], challenging the effectiveness of his trial counsel.
> The PCRA court appointed . . . Edwin G. Pfursich, IV, [(prior PCRA
> counsel)] to represent [Appellant].  Counsel did not file an
> amended petition on [Appellant's] behalf.  On January 31, 2020,
> following an evidentiary hearing at which [Appellant's] prior
> attorney testified, the PCRA court dismissed [Appellant's] petition,
> concluding that trial counsel had a reasonable basis for his trial
> strategy and that [Appellant] failed to demonstrate a reasonable
> probability that the outcome of the trial would have been different
> but for counsel's alleged errors.

*Commonwealth v. Clark*, 254 A.3d 723, 724 (Pa. 2021) (*per curiam* order).

Appellant filed a timely notice of appeal and a court-ordered Pa.R.A.P.

1925(b) statement.  The PCRA court filed a Rule 1925(a) opinion addressing

Appellant's the claims of ineffective assistance of counsel that were raised in

the Rule 1925(b) statement.

In his initial brief, Appellant raised the following issues:

_____

[5] We add that the assistant district attorney, during his closing, asserted that
no promises were made to anyone in exchange for their testimony.  R.R. at
364a.

- 4 -

1. Whether [trial counsel] provided ineffective assistance of counsel by failing to request an involuntary-manslaughter instruction.

2. Whether [trial counsel] provided ineffective assistance of counsel by failing to object to evidence excluded by the trial court before trial.

3. Whether trial counsel provided ineffective assistance by failing to seek DNA testing of the revolver used in the shooting.

Appellant's Brief at 3 (formatting altered). However, as stated above, pursuant to the remand from our Supreme Court, Appellant retained new counsel (current counsel), and with the assistance of current counsel, Appellant filed a reply brief. Appellant's reply brief includes three additional claims of ineffective assistance by prior PCRA counsel.[6]

In his reply brief, Appellant first asserts that prior PCRA counsel should have asked Appellant's brother about the conversation that Ishman had with Thornton. Appellant's Reply Brief at 28. Appellant reasons this "evidence would have been helpful when determining whether [trial counsel] had a reasonable strategic basis for not seeking the [involuntary-manslaughter]

_____

[6] Prior to *Commonwealth v. Bradley*, 261 A.3d 381 (Pa. 2021), this Court "followed then-binding precedent which compelled us to hold that [a defendant's] claims concerning the ineffectiveness of his PCRA counsel could not be addressed on the merits because they had been raised for the first time on appeal." *Commonwealth v. Crumbley*, ___ A.3d ___, 2022 PA Super 16, 2022 WL 221556, *1 (Pa. Super. filed Jan. 26, 2022). Subsequently, under *Bradley*, "layered claims of ineffective PCRA counsel may now be raised for the first time on appeal if that is the earliest practical opportunity to do so." *Id.* As discussed below, Appellant raised supplemental claims of ineffectiveness in his reply brief, which was the earliest practical opportunity.

- 5 -

instruction." ***Id.*** Appellant maintains that trial counsel's failure to call his brother resulted in an unfair trial. ***Id.*** at 29-30. Therefore, Appellant argues that prior PCRA counsel should have amended the PCRA petition to include a claim that trial counsel was ineffective for failing to call Appellant's brother as a witness at trial. ***Id.*** at 28-29.

Second, Appellant claims that despite the Commonwealth's statement that no agreements were made in exchange for testimony, prior PCRA counsel was ineffective for failing to investigate a ***Brady***[7] claim that the Commonwealth did not disclose an agreement with Lucas. ***Id.*** at 30. In support, Appellant claims that five months after his conviction, Lucas pleaded guilty in two pending cases. ***Id.*** at 31. Appellant asserts that such evidence would have been critical to impeaching Lucas' credibility. ***Id.*** at 31-32. Therefore, Appellant reasons that prior PCRA counsel should have investigated this issue and filed an amended PCRA petition. ***Id.*** at 32.

Third, Appellant asserts that prior PCRA counsel should have investigated whether trial counsel was ineffective for failing to request a weapon-focus[8] jury instruction. ***Id.*** at 32.

---

[7] ***Brady v. Maryland***, 373 U.S. 83 (1963).

[8] "The presence of a weapon impairs an eyewitness's ability to accurately identify the perpetrator's face." Jones on Evidence § 61:21 (7th ed.) (citing Elizabeth F. Loftus, *et al.*, *Some Facts About "Weapon Focus"*, 11 L. & HUM. BEHAV. 55, 61 (1987); Kerri L. Pickel, *Unusualness and Threat as Possible Causes of "Weapon Focus"*, 6 MEMORY 277, 278 (1998); Nancy Mehrkens
*(Footnote Continued Next Page)*

In **Bradley**, our Supreme Court adopted a new rule allowing PCRA petitioners to "raise claims of ineffective PCRA counsel at the first opportunity, even if on appeal." **Bradley**, 261 A.3d at 405. In reaching that conclusion, the **Bradley** Court emphasized the need to preserve a petitioner's right to effective PCRA counsel. **Id.**

The **Bradley** Court also reaffirmed the Court's preference for evidentiary hearings, and explained:

> In some instances, the record before the appellate court will be sufficient to allow for disposition of any newly-raised ineffectiveness claims. However, in other cases, the appellate court may need to remand to the PCRA court for further development of the record and for the PCRA court to consider such claims as an initial matter. Consistent with our prior case law, to advance a request for remand, a petition would be required to provide more than mere boilerplate assertions of PCRA counsel's ineffectiveness; however, where there are material facts at issue concerning claims challenging counsel's stewardship and relief is not plainly unavailable as a matter of law, the remand should be afforded.

**Id.** at 402 (citations and footnote omitted and formatting altered); **see also**

**Commonwealth v. Colavita**, 993 A.2d 874, 895 (Pa. 2010) (stating that, as "a general rule, a lawyer should not be held ineffective without first having an opportunity to address the accusation in some fashion" and noting the Court's

---

Steblay, *A Meta-Analytic Review of the Weapon Focus Effect*, 16 L. & HUM. BEHAV. 413, 416 (1992).

"strong preference that counsel be heard from before being found ineffective"), *overruled on other grounds by* **Bradley**, *supra*.[9]

Here, following our review of the record, we conclude that Appellant raised the supplemental claims challenging prior PCRA counsel's effectiveness at the earliest opportunity in his reply brief.[10]  Further, relief is not plainly unavailable, and Appellant's claims are specific challenges to the effectiveness of PCRA counsel's representation and "more than mere boilerplate assertions of PCRA counsel's ineffectiveness."  **See Bradley**, 261 A.3d at 402.  As stated above, where there are material facts at issue concerning claims challenging counsel's stewardship and relief is not plainly unavailable as a matter of law, remand should be afforded.  **See id.**  Additionally, PCRA counsel should not

---

[9] In **Commonwealth v. Smith**, 817 EDA 2020, 2021 WL 6051850 (Pa. Super. filed Dec. 21, 2021) (unpublished memo.), this Court remanded a matter for an evidentiary hearing to resolve claims of PCRA counsel's ineffectiveness that were raised for the first time in the Rule 1925(b) statement and appellate brief.  We note that we may cite to non-precedential cases for their persuasive value to the extent those cases were filed after May 1, 2019.  **See** Pa.R.A.P. 126(b).

[10] Appellant filed his opening brief on October 6, 2021, and the **Bradley** decision was issued on October 20, 2021.  Arguably, Appellant could have filed a motion to file an amended opening brief after October 20, 2021, raising prior PCRA counsel's advocacy.  However, given our Supreme Court's expressed preference "to protect and enforce a PCRA petitioner's right to effective assistance of counsel on collateral review," we decline to find waiver on this basis.  **Bradley**, 261 A.3d at 389.  Further, we note that waiver would likely result in Appellant seeking "relief in the federal system through the *de novo* filing of a writ of *habeas corpus*[, which] undermines essential principles of respect and cooperation between the state and federal judiciary, delays the collateral review process, and burdens federal courts to dispose of matters more properly addressed by our Commonwealth's judiciary."  **Id.** at 399.

be determined to be ineffective without first having an opportunity to address the accusations. *See Colavita*, 993 A.2d at 895.

For these reasons, we vacate the order denying PCRA relief and we remand the matter to the PCRA court for an evidentiary hearing to permit Edwin G. Pfursich, Esq. (prior PCRA counsel) to testify concerning the supplemental ineffectiveness claims included in Appellant's reply brief.

Order vacated. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/21/2022